**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **BETTY BOULER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 17-00372-B** |
| | * | |
| **NANCY BERRYHILL,** | * | |
| **Acting Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

<u>**ORDER**</u>

Plaintiff Betty Bouler (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* On May 10, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 25). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

## I.  **Procedural History**[1]

Plaintiff filed her application for benefits on April 25, 2014.  (Doc. 11 at 238).  Plaintiff alleges that she has been disabled since June 1, 2009, due to back problems/bad discs, swollen feet, numbness in hands, pain, high blood pressure, skin disease, nerves, depression, and problems with left eye.  (Id. at 251, 255).

Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Paul Johnson (hereinafter "ALJ") on July 28, 2016.[2]  (Id. at 48).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 55).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 72).  On September 10, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 14).  The Appeals Council denied Plaintiff's request for review on July 18, 2017.  (Id. at 5).  Therefore, the ALJ's decision dated September 10, 2016, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

[2] An earlier hearing scheduled on August 25, 2015, was continued. (Doc. 11 at 33).

waived oral argument on May 10, 2018.  (Doc. 24).  This case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

1. **Whether substantial evidence supports the assignment of little weight to the opinions of Plaintiff's treating physician, Dr. Huey Kidd, D.O., and the opinions of examining psychiatrist, Dr. David Hodo, M.D.?**

2. **Whether the ALJ erred in considering evidence that is not in the record?**

## III.  Factual Background

Plaintiff was born on February 4, 1967, and was forty-nine years of age at the time of her administrative hearing on July 28, 2016.  (Doc. 11 at 48, 251).  Plaintiff completed the tenth grade in school and one semester of eleventh grade.  While in the tenth and eleventh grades, Plaintiff was assigned to special education classes.  (Id. at 66, 292).

Plaintiff last worked in 2009 for two months as a packer on a poultry farm.  (Id. at 55, 256).  Prior to that, she had no past relevant work.  (Id. at 56).

At her hearing, Plaintiff testified that she can no longer work due to depression after the death of her son in 2014.  (Id. at 56-57, 60, 68).  Plaintiff further testified that she has problems with carpal tunnel syndrome in her left wrist, gout in her feet, diabetes, high blood pressure, low back pain, stomach

pain, trouble sleeping, and glaucoma.[3]  (Id. at 60-62, 65-68).  She takes oral medication for diabetes, as well as medication to help her sleep.  She also uses eye drops for glaucoma.  (Id. at 60-62, 65, 68, 71).  Some of Plaintiff's medications make her drowsy. (Id. at 64).  At the administrative hearing, Plaintiff reported that she was scheduled for gall bladder surgery.  (Id. at 70).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla,

---

[3] Plaintiff testified that she also suffers from an intellectual disability.  Her prior application for disability benefits on that basis was denied.  (Doc. 11 at 58-60, 71, 87).

[4] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant

proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir.

1985)).

## VI. __Discussion__

### A. __Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physician, Dr. Huey Kidd, D.O., and the opinions of examining psychiatrist, Dr. David Hodo.__

In her brief, Plaintiff argues that the ALJ erred in assigning little weight to the opinions of her treating physician, Dr. Huey Kidd, D.O., and to the opinions of examining psychiatrist, Dr. David Hodo, M.D. (Doc. 13 at 5-9). Plaintiff maintains that the ALJ erroneously concluded that these expert opinions were inconsistent with the substantial medical evidence in the case. (Id.). Defendant counters that the opinions of Dr. Kidd and Dr. Hodo are inconsistent with the objective record evidence in the case and that the ALJ had good cause to discredit the opinions. (Doc. 19 at 6-19). Having carefully reviewed the record, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so.  Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)).  However, the opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician.  Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160).  An ALJ is also "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'"  Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)).  "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources."  Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.  Phillips v. Barnhart, 357

F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of degenerative joint disease, obesity with lumbago, borderline intellectual functioning, and major depression versus depressive disorder. (Doc. 11 at 16). The ALJ also determined that Plaintiff has the RFC to perform a range of light work with the following restrictions: Plaintiff can frequently stoop, and occasionally climb, kneel, crouch and crawl. She can occasionally operate foot controls. She must avoid exposure to extreme temperatures; vibrating and dangerous machinery; and unprotected heights. She can perform simple tasks with gradual introduction of new tasks and assignments. She can maintain attention, concentration and pace to acceptably perform the simple tasks for two-hour increments throughout the workday. Assigned

job duties will require no direct public contact. (Doc. 11 at 21).

The ALJ also found that Plaintiff has no past relevant work. (Id. at 25). Utilizing the testimony of the vocational expert, the ALJ concluded that Plaintiff can perform work such as a tagger, laundry worker, and inspector (all light and unskilled). (Id. at 25-26, 72, 74). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's findings related to Plaintiff's RFC and the weight accorded to the opinions of Plaintiff's treating physician, Dr. Kidd, and examining psychiatrist, Dr. Hodo, are supported by substantial evidence.

First, with respect to Plaintiff's treating physician, Dr. Kidd, the record shows that on August 15, 2016, Dr. Kidd completed a Medical Source Statement ("MSS") (Physical). In the MSS (Physical), Dr. Kidd opined that Plaintiff could occasionally lift/carry five pounds, frequently lift/carry one pound, stand/walk for less than one hour in an eight-hour workday, sit for less than one hour in an eight-hour workday, and that Plaintiff would be absent from work more than three times a month. (Id. at 917).

Dr. Kidd also completed a Clinical Assessment of Pain ("CAP") form on August 15, 2016. In the CAP form, Dr. Kidd opined that Plaintiff's pain is "virtually incapacitating," and prevents her

from maintaining attention, concentration, or pace for periods of at least two hours. (Id. at 918). Dr. Kidd did not identify which medical conditions or impairments served as the bases for Plaintiff's debilitating restrictions and pain. (Id.).

The ALJ accorded little weight to Dr. Kidd's assessments. He found that Dr. Kidd's opinions in the MSS (Physical) and CAP forms were inconsistent with the medical evidence, including his own treatment records. (Id. at 23-25). Specifically, the record shows that Dr. Kidd treated Plaintiff from 2011 to 2016 for various ailments including hypertension, obesity, lumbago, diabetes, back and shoulder pain, major depression with psychotic features, and gall stones. (Id. at 601, 663-71, 680-82, 686, 920-23). While there is no question that Plaintiff has been diagnosed with these medical conditions, Dr. Kidd's treatment records reflect largely conservative treatment with medication and two steroid injections for back pain, all of which have been adequate at controlling her symptoms. (Id. at 681-82, 698).

In fact, Dr. Kidd's records contain largely normal physical examination findings with notations that Plaintiff was "well appearing," "not ill-appearing," that she "did not appear uncomfortable," that she had normal posture, normal reflexes, normal gait, and normal stance, and that while she experienced tenderness, pain, and stiffness in her lower back and shoulder, it was "relieved by medication." (Id. at 601-03, 608, 613, 668, 680,

686, 691, 695).  In addition, an x-ray of Plaintiff's lumbosacral spine, taken on April 1, 2015, showed degenerative spondylosis and "mild" facet arthropathy without significant disc space narrowing. (Id. at 620).  Similarly, a CT scan of Plaintiff's cervical spine, taken on May 14, 2016, showed "no acute finding," degenerative change at C6-7, "no significant spinal stenosis," and "mild right foraminal stenosis."  (Id. at 761).  This evidence is inconsistent with the severe limitations expressed in the MSS (Physical) and CAP forms completed by Dr. Kidd.

In addition to being inconsistent with his own treatment records, Dr. Kidd's opinions are inconsistent with Plaintiff's treatment records from Dr. Ronnie Chu, M.D., who treated Plaintiff in 2014 for low back and shoulder pain and depression.  Dr. Chu's records regularly reflect that Plaintiff was in no acute distress, that she had a normal gait, that she moved all of her extremities "well with full range of motion," and that she had no swelling in her extremities.  (Id. at 326-27, 480-81, 654).  Dr. Chu's mental examination findings similarly reflect normal orientation, normal mood, and normal affect.  (Id. at 481).

Plaintiff was also treated by Dr. Gerold Sibanda, M.D., at Whatley Health Services, Inc., from 2012 to 2014, for diabetes, hypertension, arthritis, carpal tunnel syndrome, degenerative disc disease, and unspecified type schizophrenia.  (Id. at 336-37). Dr. Sibanda's treatment records reflect that Plaintiff's symptoms

were stable and controlled with medication. (Id.). In fact, Dr. Sibanda's physical examination notes reflect largely normal findings, including normal range of motion, normal muscle strength, and stability in all extremities with no pain. (Id. at 334-43, 595). Dr. Sibanda further noted that Plaintiff's conditions were "stable," "well controlled with current medicines" and that she was "doing well." (Id.). Dr. Sibanda encouraged Plaintiff to continue her medications and to exercise. (Id. at 336). With respect to Plaintiff's mental health condition, on February 19, 2014, Dr. Sibanda noted that Plaintiff's "schizophrenia" was "stable" and that she was "doing well on current regimen." (Id. at 334, 339). His psychiatric examination notes likewise reflect largely normal findings, including normal orientation, normal mood and affect, normal insight, and normal judgment. (Id. at 339, 343, 595).

Plaintiff also sought mental health treatment at West Alabama Mental Health Center from 2012 to 2016 for depression with psychotic symptoms.[5] (Id. at 767). Plaintiff's treatment notes reflect that she was compliant with her medication and that her "progress [was] good;" her symptoms were stabilized and controlled; she was sleeping well; her mood and affect were

_____

[5] Plaintiff reported having hallucinations in which she saw her dead son. (Doc. 11 at 769).

appropriate; her insight and judgment were adequate; her thought process was coherent; her thought control was adequate; and she reported that she was "walking for exercise several times a week" and "doing good." (Id. at 636, 641, 644, 767-68, 776, 781-82, 792, 796-97, 800-01, 816).

In sum, Plaintiff's treatment records, on the whole, reflect successful, conservative treatment for her physical and mental health conditions resulting in largely normal examination findings and reports by Plaintiff that she is doing well. As the ALJ found, these treatment records are inconsistent with the severe limitations expressed by Dr. Kidd in the MSS (Physical) and CAP forms that he completed. Therefore, the ALJ had good cause to discredit those opinions.

Plaintiff also argues that the ALJ erred in rejecting the opinion of one-time examining psychiatrist, Dr. David Hodo, M.D., that Plaintiff has marked or extreme limitations in every functional category. (Doc. 13 at 5; Doc. 11 at 728). The record shows that on June 16, 2016, Dr. Hodo examined Plaintiff and noted that she had suffered several recent deaths in her family, including her son, and that she reported suffering from hallucinations. (Doc. 11 at 724-25). Dr. Hodo's mental health examination findings reveal that Plaintiff was well dressed, that her mood was anxious and to some degree depressed, that her thoughts were mostly logical, that she reported having auditory

and visual hallucinations and occasionally feeling suicidal, that she had marked grief over the loss of her son and other family members, and that her sensorium was intact. (Id. at 725). Dr. Hodo's impression was "major depression, severe, with psychotic features." (Id. at 726). Dr. Hodo also completed a "Medical Source Opinion Form (Mental)," wherein he opined that Plaintiff had marked or extreme limitations in every listed category. Dr. Hodo further opined that Plaintiff's condition would likely deteriorate under the stress of a job, although Dr. Hodo did note that Plaintiff's medication "helps" and that she "should be able to manage any financial benefits awarded to her." (Id. at 726-28).

The ALJ accorded little weight to Dr. Hodo's assessments. He found that Dr. Hodo's opinions in the MSS (Mental) form were the result of a single examination by a non-treating source and were based on Plaintiff's subjective reports of hallucinations and suicidal thoughts. The ALJ further concluded that the opinions were simply inconsistent with the substantial medical evidence detailed above, including Plaintiff's conservative mental health treatment. (Id. at 18). Indeed, the medical record is devoid of any evidence indicating a need for hospitalization or inpatient care for Plaintiff's allegedly debilitating mental health conditions referenced by Dr. Hodo. To the contrary, as the ALJ noted, Plaintiff reported that she is able to care for her own

personal needs without assistance; she takes care of her twelve-year-old son; and she cooks, washes clothes, irons, performs household chores, drives, shops, and manages her own finances. (Doc. 11 at 66-67, 266-68). All of the foregoing evidence is inconsistent with the severe limitations expressed by Dr. Hodo in the MSS (Mental) form that he completed. Therefore, the ALJ had good cause to discredit those opinions.

The Court further finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform light work, with the stated restrictions.[6] Indeed, Plaintiff has failed to show that any limitations caused by her physical or mental impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. For each of these reasons, Plaintiff's claim must fail.[7]

---

[6] As discussed, the ALJ determined that Plaintiff has the RFC to perform a range of light work with the following restrictions: Plaintiff can frequently stoop, and occasionally climb, kneel, crouch and crawl. She can occasionally operate foot controls. She must avoid exposure to extreme temperatures; vibrating and dangerous machinery; and unprotected heights. She can perform simple tasks with gradual introduction of new tasks and assignments. She can maintain attention, concentration and pace to acceptably perform the simple tasks for two-hour increments throughout the workday. Assigned job duties will require no direct public contact. (Doc. 11 at 21).

[7] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there

### B. The ALJ's reference to evidence discussed in a prior administrative decision does not require remand.

Last, Plaintiff argues that the ALJ's consideration of evidence that was not made a part of the record requires a remand in the instant case. (Doc. 13 at 7). Specifically, Plaintiff claims that the ALJ's reference to a prior administrative decision which discussed a consultative report by Dr. Nina Tocci, Ph.D., finding that Plaintiff was malingering in a mental status evaluation conducted on May 31, 2011, was error. Plaintiff contends that remand is warranted because the ALJ did not include Dr. Tocci's report in the record in the instant case. (Doc. 11 at 18). Plaintiff also claims that she was deprived of the opportunity to review the report, thereby violating several HALLEX provisions. (Id.). The Commissioner counters that the ALJ did not err in considering Dr. Tocci's opinion that Plaintiff was malingering, and that, in any event, any such error would be

_____

is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").

harmless.  (Doc. 19 at 11).

In her brief, Plaintiff argues that:

> HALLEX I-2-1-35 requires that the ALJ must
> provide the claimant or representative an
> opportunity to examine the material that
> constitutes or will constitute the evidence of
> record before the hearing.  This includes
> evidence from a prior claim file if the ALJ is
> going to rely on it.  HALLEX I-2-1-13E.
> Moreover, all evidence used in the
> determination of a claim must be entered into
> evidence in that claim and listed as an
> exhibit under HALLEX I-2-1-15 and I-2-1-20.
> The ALJ cannot base his decision on evidence
> that is not part of the record.

(Doc. 13 at 7).  Plaintiff's argument is misplaced for several
reasons.

First, a review of the ALJ's decision in the instant case
reveals that the ALJ referenced a prior administrative decision,
dated November 13, 2012, in which that ALJ discussed Dr. Tocci's
finding that Plaintiff had malingered during her 2011
psychological consultative examination.  (Doc. 11 at 18-19, 24).
Notably, the prior administrative decision referencing Dr. Tocci's
report is in the record in the instant case.  (Doc. 11 at 85, 91).
Moreover, despite Plaintiff's argument that she has been deprived
of the opportunity to examine Dr. Tocci's report, she does not
dispute that the report was part of the record in her prior
proceedings.  Therefore, she clearly has had access to the report.

Next, with respect to Plaintiff's argument that the instant
case should be remanded based on the ALJ's alleged violations of

HALLEX, the Court notes that the Hearings, Appeals and Litigation Law Manual ("HALLEX") is a policy manual written by the Social Security Administration to provide policy and procedural guidelines to ALJs and other staff members. See Bryant v. Colvin, 2015 U.S. Dist. LEXIS 144792, *17 n.16, 2015 WL 6457574, *5 n.16 (S.D. Ala. Oct. 26, 2015), aff'd, 661 Fed. Appx. 686 (11th Cir. 2016). Although the Eleventh Circuit has not issued a definitive decision regarding the enforceability of HALLEX, several court decisions strongly suggest that the HALLEX provisions do not carry the force of law. See, e.g., McCabe v. Commissioner of Social Sec., 661 Fed. Appx. 596, 599 (11th Cir. 2016) ("This Court has not decided whether HALLEX carries the force of law...."); George v. Astrue, 338 Fed. Appx. 803, 805 (11th Cir. 2009) ("[E]ven if we assume that § I-2-8-40 of HALLEX carries the force of law — a very big assumption — the ALJ did not violate it[.]"); see also Green v. Berryhill, 2018 U.S. Dist. LEXIS 39914, *26, 2018 WL 1278433, *4-5 (S.D. Ala. Mar. 12, 2018)(rejecting Plaintiff's assignment of error because "HALLEX lacks the force and effect of law and cannot serve as a basis of reversible error on the part of the ALJ."); Fisher v. Berryhill, 2017 U.S. Dist. LEXIS 151381, *33, 2017 WL 4158635, *11 (S.D. Ala. Sept. 19, 2017)("Fisher's reliance upon HALLEX I-2-6-70(A) is unavailing because it does not appear that HALLEX provisions carry the force of law."); Quarles v. Colvin, 2016 U.S. Dist. LEXIS 105479, *20, 2016 WL 4250399, *7 (S.D. Ala.

Aug. 10, 2016) ("HALLEX is an SSA internal manual that 'does not carry the authority of law.'").

Even assuming, *arguendo*, that the HALLEX provisions at issue do carry the force and effect of law, and further assuming a violation thereof, Plaintiff has failed to show any prejudice as a result of any alleged violation in the instant case, thereby precluding a remand on that basis. See McCabe, 661 Fed. Appx. at 599 ("Even assuming (without deciding) that HALLEX carries the force of law and the agency failed to comply with it, McCabe has not shown that she was prejudiced by this failure."); Carroll v. Social Sec. Admin., Commissioner, 453 Fed. Appx. 889, 892 (11th Cir. 2011) (discussing HALLEX and noting that "an agency's violation of its own governing rules must result in prejudice before [the Eleventh Circuit] will remand to the agency for compliance.").

As discussed, Plaintiff did have access to Dr. Tocci's report in her prior administrative proceedings; the prior administrative decision discussing Dr. Tocci's report is included in the record in the instant case; Dr. Tocci's finding of malingering is referenced by the State Agency reviewer, C. Finch, SDM, in his assessment in the instant case; and, in any event, Dr. Tocci's report is merely cumulative of other substantial evidence considered by the ALJ on the issue of whether Plaintiff's subjective complaints, and Dr. Hodo's opinions based thereon, were

consistent with the objective record evidence.[8]  (Doc. 11 at 91-92, 111).  Thus, Plaintiff has failed to show prejudice as a result of the alleged HALLEX violations.

Accordingly, for each of the foregoing reasons, Plaintiff's claim must fail.

**VII.  Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED**.

**DONE** this **28th** day of **June, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] The ALJ also discussed the evidence of Plaintiff's wide range of activities of daily living, her conservative mental health treatment, and the fact that her mental health symptoms were adequately managed and controlled by her medications.  (Doc. 11 at 18-25).